IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CATHRYN THORPE,<br>Plaintiff,<br>v.<br><br>THOMAS JEFFERSON UNIVERSITY HOSPITALS, INC. d/b/a JEFFERSON HEALTH,<br>Defendant. | Case No. 2:25-cv-07167-CMR |

**SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

In accordance with this Court's June 1, 2026, Order, Defendant Jefferson Health files this Supplemental Brief in support of its Motion to Dismiss Plaintiff's Class Action Complaint ("the "Motion"). In support thereof, Jefferson Health states as follows:

## I. ARGUMENT

The Order invites Jefferson Health to explain the ways in which its Motion differs from "this Court's Order denying its Motion to Dismiss a substantively identical complaint in *Murphy*." Dkt. 22 at 1.[1] Two such issues are controlling here.

### A. Many of Plaintiff's Putative Class Claims Are Time-Barred

*Murphy* did not call on this Court to resolve whether Plaintiffs' class claims are timely. There, the issue was simple: Plaintiffs' claims – as well as those of the class – reached back from the date *Murphy* was filed. The same principle should apply here. Plaintiff filed her complaint on December 18, 2025, and the statutes of limitations for each class claim look back from that date.

[1] *See Murphy v. Thomas Jefferson Univ. Hosps., Inc.*, No. CV 22-4674, 2024 WL 4350328, at *1 (E.D. Pa. Sept. 30, 2024).

But Plaintiff goes further, claiming that *Murphy* "tolled the limitations period … from November 22, 2022, until Judge Rufe dismissed the plaintiffs [] claim." Opp'n at 5. She therefore believes the relevant statutes of limitations for her class claims look back from "*Murphy*, not [from when] Plaintiff filed this case." Opp'n at 5.

Plaintiff misunderstands the law. A plaintiff "who waits out the statute of limitations [cannot] piggyback on an earlier, timely filed class action." *China Agritech v. Michael H. Resh,* 584 U.S. 732, 740 (2018). Nor may one "toll new class actions just because there was a prior timely class action." *Blake v. JP Morgan Chase Bank NA*, 927 F.3d 701, 710 (3d Cir. 2019). So, "the pendency of the [*Murphy*] class action … does not toll the time for filing [the *Thorpe*] class action." *Id.*

This materially limits Plaintiff's putative class claims. The negligence and ECPA claims cannot move forward to the extent they accrued before December 18, 2023; the invasion of privacy claim is barred to the extent it accrued before December 18, 2024; and the implied contract and unjust enrichment claims cannot stand to the extent they arise before December 18, 2021. *See* Opening Br. at 6-8. The Court should dismiss the untimely portions of Plaintiff's putative class claims. *See Stockdale v. Allstate Fire & Cas. Ins. Co*., 390 F. Supp. 3d 603, 613 (E.D. Pa. 2019) (holding that the portion of putative class claim arising "prior to January 23, 2015 [is] time-barred, and will be dismissed"); *In re Processed Egg Prods. Antitrust Litig.*, 931 F. Supp. 2d 654, 665 (E.D. Pa. 2013) (dismissing putative class claims to the extent they "arose before the following dates").

**B. Plaintiff Consented to the Use of Meta Technologies**

Plaintiff is also subject to consent defenses that did not arise in *Murphy*. She concedes that Jefferson's Privacy Policy has included the following disclaimer since July 14, 2024:

> We or our vendors may use cookies, web beacons, pixels, and other similar technologies on certain webpages of the Sites for various purposes, including to provide functionality of the Sites, to improve performance of the Sites, to analyze and better understand how the Sites are being used, and **for marketing purposes**. **These technologies may collect certain information, such as device identifiers, your IP address, other unique identifiers, all of the areas within the Sites that you visit, and the length and time of the visit**.
>
> Our vendors may include, but are not limited to:
>
> ***
>
> 2. **Facebook**. To change your privacy and advertising settings with Facebook, login to your Facebook account and navigate to the Privacy Center at facebook.com/privacy/center or review your Ad Preferences at facebook.com/adpreferences.
>
> ***
>
> Please note that we or other parties may collect personal information about your online activities over time and across different devices and online properties when you use the Sites. . . .

*See* Motion, Dkt 9-2, Declaration of Christian Small, Exhibits 1 and 2 (emphasis provided).

Plaintiff does not dispute that this express disclaimer – which was posted *after* the *Murphy* motion was fully briefed – is both binding and effective. She instead contends that it does not apply because "Defendant's Website Privacy Policy did not disclose the[] specific actions Plaintiff challenges." Opp'n at 30. Plaintiff's argument is not supported by the record. Comparing Plaintiff's allegations in paragraph 148 of the Complaint to the Website Privacy Policy demonstrates that all of the alleged acts that form the basis of Plaintiff's claims were disclosed. She alleges that the fact she went to the website; the sections of the website she was on, her IP address, device identifiers and other cookie identifiers were disclosed to Meta. Dkt 1 ¶ 148. Each of those actions were specifically disclosed in the Website Privacy Policy stating the technologies used on the website could be used for marketing purposes and may collect information "such as

device identifiers, your IP address, other unique identifiers, all of the areas within the Sites that you visit, and the length and time of the visit." Dkt 9-2. The Website Privacy Policy also provided Plaintiff with information regarding how she could change her privacy and advertising settings with Facebook. *Id.* The Privacy Policy's express disclaimer thus establishes Plaintiff's consent to the use of the Meta Technologies that give rise to this suit.

That consent impacts each of Plaintiff's claims. Her ECPA claim falters both because she "consent[ed] to [the alleged] interception," 18 U.S.C. § 2511(d), *and* because she cannot now invoke the ECPA's crime-tort exception where she allowed Jefferson to engage in the conduct she complains of. *See Adair v. Cigna Corp. Servs., LLC*, 818 F. Supp. 3d 641, 669 (E.D. Pa. 2026) (holding that privacy policy compelled dismissal on consent grounds because "where a plaintiff's allegations trigger one of the [ECPA] exceptions, dismissal of the wiretapping claim is warranted"); *Cooper v. Slice Techs., Inc.*, 2018 WL 2727888, at *4 (S.D.N.Y. June 6, 2018) (privacy policy barred plaintiff from invoking ECPA's crime-tort exception because "[i]f there was consent, then there was no tort").[2] Her invasion of privacy claim fails because Plaintiff "gave Defendants permission to track, collect, and share [her] data." *Adair*, 818 F. Supp. 3d at 669 (cleaned up). Her negligence claim is barred because "'one who effectively consents to the conduct of another … cannot recover in an action of tort.'" *Schall v. Vazquez*, 322 F. Supp. 2d 594, 601 (E.D. Pa. 2004) (quoting Restatement (Second) Torts § 892A); *Valentino v. Philadelphia Triathlon, LLC*, 150 A.3d 483, 494 (Pa. Super. Ct. 2016) (holding that express disclaimer barred

[2] Jefferson acknowledges that this Court addressed the applicability of the crime-tort exception in *Murphy*. It submits, however, that the weight of authority post-dating *Murphy* establishes that the crime-tort exception is inapplicable where, as here, "the interception that provides the basis for the alleged ECPA violation is itself the disclosure that provides the basis for the HIPAA violation" and "[t]here is no allegation that the act of disclosure was in any respect separate or independent of the intentional act of deploying the web tracking tool." *Doe v. Lawrence Gen. Hosp.*, 2025 WL 2808055, at *13 (D. Mass. Aug. 29, 2025); *see also* Opening Br. at 10-17 (collecting cases).

negligence claim because it "transforms the nature of the defendant's conduct … from tortious to non-tortious").[3] And her contract and unjust enrichment claims each are foreclosed because the Privacy Policy – which Plaintiff otherwise relies upon – expressly permits Jefferson to deploy the Meta Technologies. *See Gillis v. Respond Power, LLC*, 2018 WL 3427636, at *4 (E.D. Pa. July 16, 2018) (holding that breach of contract claim "is implausible and foreclosed by the [express disclaimer's] clear and unambiguous language"); *Steinberg v. CVS Caremark Corp.,* 899 F. Supp. 2d 331, 341-42 (E.D. Pa. 2012) (finding that consent of plaintiffs weighed against finding receipt of profits "unjust" in dismissal of unjust enrichment claim).[4]

Simply put, unlike in *Murphy*, the Privacy Policy's express disclaimer both establishes Plaintiff's consent and bars her from holding Jefferson Health liable for deploying the Meta Technologies on its websites *after* that disclaimer was posted. The Court should therefore dismiss each of Plaintiff's claims to the extent they accrued after July 14, 2024.

## II. CONCLUSION

For the foregoing reasons, as well as those set forth in the Motion and Reply, Jefferson Health respectfully asks the Court to dismiss the Complaint against it with prejudice.

---

[3] In *Murphy*, the Court declined to dismiss Plaintiff's negligence claim because Judge Schiller previously found that "the Amended Complaint does plausibly allege Jefferson Health owed Plaintiffs a duty of care via the publication of its privacy policies." *Murphy*, 2024 WL 4350328, at *6. Here, however, the Jefferson Privacy Policy's express disclaimer bars Plaintiff from using it to supply a negligence duty. But even if it didn't, as explained in Jefferson's Reply, the gist of the action doctrine precludes Plaintiff from relying "on (unenforceable) privacy statements [to] support her" negligence claim. Reply at 7. That doctrine – which was not before the Court in *Murphy* – bars Plaintiff's negligence cause of action.

[4] *Adair* – which post-dates *Murphy* – also held that the plaintiff lacked standing to pursue her unjust enrichment claim because that plaintiff's theories of diminished PII value and lost benefit of the bargain "fail to allege a concrete, personal harm." *Adair*, 818 F. Supp. 3d at 664. As explained in Jefferson's Opening Brief, Plaintiff's contract and unjust enrichment claims should be dismissed for the same reason. *See* Opening Br. at 6.

Dated: June 15, 2026

Respectfully submitted,

**BAKER & HOSTETLER LLP**

*/s/ Elizabeth A. Scully*
Edward J. McAndrew (Pa Bar No. 77103)
Jackson D. Teague (Pa Bar No. 333613)
1735 Market Street
Suite 3300
Philadelphia, PA 19103
emcandrew@bakerlaw.com
jteague@bakerlaw.com
T: (215) 564-8386
F: (215) 568-3435

Elizabeth A. Scully (*pro hac vice*)
BAKER & HOSTETLER LLP
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5304
escully@bakerlaw.com
T: (202) 861-1500
F: (202) 861-1783

*Attorneys for Defendant Thomas Jefferson University Hospitals, Inc. d/b/a/ Jefferson Health*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of June 2026, I electronically filed the foregoing Supplemental Brief with the Court using the CM/ECF system, which will automatically serve all attorneys of record via the Court's CM/ECF System.

*/s/ Elizabeth A. Scully*
Elizabeth A. Scully