**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CATHRYN THORPE,**<br>**Plaintiff,**<br>**v.**<br><br>**THOMAS JEFFERSON UNIVERSITY HOSPITALS, INC. d/b/a JEFFERSON HEALTH,**<br>**Defendant.** | : | **Case No. 25-cv-7167-CMR** |

**PLAINTIFF'S SUPPLEMENTAL OPPOSITION**
**TO DEFENDANT'S MOTION TO DISMISS**

In accordance with this Court's June 1, 2026, Order [Doc. 22], Cathryn Thorpe ("Plaintiff") respectfully answers the Supplemental Brief filed by Thomas Jefferson University Hospitals, Inc. ("Defendant") [Doc. 23] as follows:

## I. INTRODUCTION

Defendant has moved to dismiss the ECPA, breach of contract, negligence, intrusion upon seclusion, and unjust enrichment claims in Plaintiff's Complaint [Doc. 1] on the same grounds this Court previously held were insufficient to support dismissal of these same claims in *Murphy v. Thomas Jefferson University Hospitals, Inc.*, a prior action based on similar facts. *Cf.* Def. Memo, pp. 8-32 [Doc. 9-1] *with Murphy,* E.D. Pa. Case No. 22-cv-4674, Motion to Dismiss, pp. 5-25 [Doc. 39-1] *and Murphy*, 2024 WL 4350328 (E.D. Pa. Sept. 30, 2024) (opinion denying motion).

On June 1, 2026, this Court ordered Defendant to file a supplemental brief explaining why its current Motion is not subject to the analysis and ruling in *Murphy*. Jun. 1, 2026 Order [Doc. 22]. Defendant's has since given this Court two reasons to deviate from its rulings in *Murphy*: 1) statutes of limitations bar some part of each of Plaintiff's claims (*e.g.,* her ECPA claim before December 18, 2023 and her unjust enrichment claim before December 18, 2021); and 2) "Plaintiff

consented to the use of Meta technologies" which, in Defendant's estimation, has evolved from an argument previously impacting only Plaintiff's privacy claim to one that now reaches all five of her claims. *See* Def. Supp. Br., pp. 1-2 (limitations argument), pp. 2-5 (consent impacts all claims) [Doc. 23]; Def. Memo, pp. 26-27 (consent impacts privacy claim) [Doc. 9-1].

As discussed below, because of the procedural posture of this case, the fact that no discovery has occurred, the logical inconsistency of Defendant's arguments, and the compelling reasoning of this Court's prior rulings, Plaintiff respectfully submits the Court should follow its prior rulings and deny Defendant's Motion in all respects.

## II. ARGUMENT

### A. There Is No Factual Or Legal Basis To Dismiss Plaintiff's Claims As Time-Barred At This Litigation Stage

Determining the timeliness of claims is an inherently fact-based determination. *See McVicker v. Briggs*, 2021 WL 4444402, *6 (W.D. Pa. 2021) (complaint "raises questions of fact about whether plaintiff's actions sufficiently tolled the statute of limitations"); *Slamon v. Carrizo* LLC, 2020 WL 2525961, *21 (M.D. Pa. 2020) (application of discovery rule requires fact-based determinations regarding what was known and when); *Pearce v. Borough of Glassport*, 2016 WL 3855033, at *4 (n.6) (W.D. Pa. July 15, 2016) (assessing limitations issues involves fact-based inquiries), *citing Miller v. Phila. Geriatric Ctr*., 463 F.3d 266, 276 (3d Cir. 2006) (when limitations period begins to run "is a factual determination"); *Santiago v. SEPTA*, 2015 WL 2343825, *4 (E.D. Pa. 2015), *citing Van Buskirk v. Carey Canadian Mines, Ltd*., 760 F.2d 481, 498 (3d Cir.1985) ("applicability of the statute of limitations usually involves questions of fact for the jury"); *Swope v. Cent. York Sch. Dist*., 796 F. Supp. 2d 592, 605 (M.D. Pa. 2011) (hypothetical lack of timeliness does not support dismissal because "any inquiry into the application of the statute of limitations requires a highly factual determination"); *Mavrinac v. EMAP*, 2007 WL 2908007, *10 (W.D. Pa.

2007) (timeliness of claim "is a fact based determination for the jury").

Defendant's opening Motion admits that, at this litigation stage, "it is entirely unclear whether [Plaintiff's] individual claims are [] barred by the statute of limitations." Def. Memo, p. 7 [Doc. 9-1]. This admission totally undermines Defendant's statute of limitations argument that Plaintiff's claims are all time-barred "to the extent they are based on any alleged activity on Defendant's website" before the operative limitations start date. *Id.* at pp. 7-8; Def. Supp. Br. at pp. 1-2 (suggesting the Court should dismiss claims "to the extent they accrued before" a certain date) [Doc. 23]. Under all the mandatory and persuasive authority cited above, Defendant's argument cannot require a "partial dismissal" of any of Plaintiffs' claims, because Plaintiff has pled plausible facts supporting the timeliness of her claims and her entitlement to tolling.[1] Further, the Parties have had no discovery into any of the relevant events, including: whether Defendant concealed the existence or function of pixels on its web properties; whether Plaintiff knew about the existence or function of pixels on Defendant's web properties; whether the discovery rule tolls the limitations periods applicable to Plaintiff's claims; when Plaintiff interacted with Defendant's web properties; what statements or disclosures Defendant made to Plaintiff about communications on its web properties; and when Defendant made these statements or disclosures. Because no

---

[1] *See* Complaint at ¶¶145-147, 161-165 (Plaintiff alleges she "opened a Facebook account before 2018," "has continuously maintained this account to the present," has been a patient of Jefferson Health since before 2018," that "[b]efore 2018, Plaintiff created an account on Jefferson Health's web properties," and that, "When Meta Collection Tools were present, at the same time she was seeking diagnosis and treatment for these conditions, Plaintiff used the MyJeffersonHealth website and MyChart patient portal to search for medical providers, schedule appointments with these providers, communicate with these providers, view test results, read doctors' notes and care recommendations, review webpages that provide information about prescriptions, treatments, and services related to her specific symptoms, diagnoses, treatments, and medications, and request prescription refills." Plaintiff also alleges that, when she "engaged in these communications with Jefferson Health's web properties, Meta's Collection Tools intercepted individually-identifiable patient information and patient health information that included: her status as a Jefferson Health patient, the dates and times she logged-in to the MyChart patient portal, and the webpages she clicked and viewed related to her medical providers, conditions, and treatments") [Doc. 1].

discovery has taken place on the timing or accrual of Plaintiffs' claims, or how the discovery rule will ultimately apply in this case, this Court has no factual or legal basis to endorse Defendant's premature, unsupported, and vague attempt to dismiss all of Plaintiff's claims on limitations grounds.

Further – and totally separate from the above analysis – Defendant also suggests Plaintiff's ECPA claim is time-barred under *Blake v. JP Morgan Chase Bank NA*, 927 F.3d 701, 709 (3d Cir. 2019) ("courts may not toll new class actions under *American Pipe*, period"). Def. Supp. Br. at pp. 2 [Doc. 23]. This argument is based on an obvious misreading and/or misapplication of federal precedent.

The Supreme Court's *American Pipe* decision has been understood for decades to hold that filing a class action tolls the statute of limitations for all federal claims against the same defendant for all class members until the propriety of class certification is resolved. *American Pipe & Const. Co. v. Utah*, 414 U.S. 538, 561, (1974) ("the commencement of the class action in this case suspended the running of the limitation period only during the pendency of the motion to strip the suit of its class action character"). Consistent with this holding, federal courts have routinely applied the federal supplemental jurisdiction statute, 28 U.S.C. § 1367, to toll the statute of limitations running on all civil state law claims against the same defendant for all class members while a federal class claim is pending. *In re Generic Pharms. Pricing Antitrust Litig.,* 2026 WL 1210782, *4 (E.D. Pa. May 4, 2026); *Romero v. Allstate Ins. Co*., 2018 U.S. Dist. LEXIS 85374, *48 ("§ 1367(d) tolls state claims that are subject to supplemental jurisdiction just as *American Pipe* tolls federal claims").

Following these principles, the U.S. Supreme Court, the Third Circuit Court of Appeals, and this Court have all held that filing a class action asserting federal claims tolls the statute of

limitations running on all civil claims for all class members from the original class complaint until the issuance of an order denying class certification. *See Crown Cork & Seal v. Parker*, 462 U.S. 345, 350; *China Agritech v. Resh*, 584 U.S. 732, 734 (2018); *American Pipe*, 414 U.S. at 561 ("the commencement of the class action in this case suspended the running of the limitation period only during the pendency of the motion to strip the suit of its class action character"); *Aly v. Valeant Pharma*, 1 F.4th 168, 172 (3d Cir 2021); *Blake v. JP Morgan Chase*, 927 F.3d 701, 709 (3d Cir. 2019); *Jenkins v. PetSmart, LLC*, 2023 WL 8548677, *15 (E.D. Pa. Dec. 11, 2023) ("the timely filing of a class action tolls the applicable statute of limitations for all persons encompassed by the class complaint").

These holdings all dictate that the November 22, 2022 *Murphy* complaint tolled the statute of limitations running on all claims for all class members and that, because this Court's December 17, 2025 dismissal of the named plaintiffs' ECPA claim for lack of standing in *Murphy* did not deny class certification, the civil claims Plaintiff filed in this action on December 18, 2025 qualify for *American Pipe* tolling extending back from November 23, 2020. 28 U.S.C. § 1367; *China Agritech*, 584 U.S. at 734; *Crown Cork & Seal*, 462 U.S. at 350; *American Pipe*, 414 U.S. at 561; *Aly*, 1 F.4th at 172; *Blake*, 927 F.3d at 709; *Jenkins*, 2023 WL 8548677 at *15. *See Voicenet Communications, Inc. v. Corbett*, 2006 WL 2506318, *7 (E.D. Pa. Aug. 30, 2006) (ECPA statute of limitations is two years), *citing* 18 U.S.C. § 2707(f).

Three key policy considerations support the application of *American Pipe* tolling to class action claims unless and until class certification is denied. First, this result provides economies of litigation for courts and parties by eliminating the need for individual claims to be filed until after class certification is denied. *See China Agritech,* 584 U.S. at 738 ("Applying *American Pipe* tolling to successive class actions… promote[s] economy of litigation by reducing incentives for

filing protective class suits during the pendency of an initial certification motion"); *Aly*, 1 F.4th at 173 ("*American Pipe* tolls the limitation period for individual claims because economy of litigation favors delaying those claims until after a class-certification denial"). Second, consistent with Fed. R. Civ. P. 23 (c)(1)(A), this result encourages an early determination as to whether a class will be certified and who will lead it. *See De Camara v. Bryn Mawr Coll.,* 2025 WL 2779338, *16 (n. 164) (E.D. Pa. Sept. 26, 2025); *Friel v. Line 5, LLC*, 2025 WL 2422617, *4 (M.D. Pa. Aug. 21, 2025). Third, this result avoids the unfairness of requiring defendants to repeatedly litigate class certification issues. *See China Agritech*, 584 U.S. at 734; *Crown Cork & Seal*, 462 U.S. at 350; *American Pipe*, 414 U.S. at 561; *Aly*, 1 F.4th at 172; *Blake*, 927 F.3d at 709; *Jenkins*, 2023 WL 8548677 at *15. As a result, Defendant's argument that all or part of Plaintiff's ECPA, breach of contract, negligence, intrusion upon seclusion, and unjust enrichment claims are untimely is both premature and legally unsound.

**B. Plaintiff Did Not Agree To Having Her Protected Health Information Intercepted By "Consenting To The Use Of Meta Technologies"**

Defendant has materially shifted the substance of this argument since its original Motion, but the result is the same. Originally, Defendant argued that the disclosures contained in the May 14, 2024 version of its Website Privacy Policy "specifically disclosed the use of cookies and other similar technologies on the website, including disclosure of the use of Facebook technologies, which may collect information about visitor's use of the website that may be used 'for marketing purposes.'" Def. Mem. at p.26 [Doc. 9-1]. In its supplemental filing, Defendant has now pivoted to claim the July 14, 2024 version of its Privacy Policy discloses that "[w]e or our vendors may use… pixels… on certain webpages… for marketing purposes… [involving] certain information, such as device identifiers, your IP address, other unique identifiers, all of the areas within the Sites that you visit, and the length and time of the visit." Defendant believes this language "establishes

Plaintiff's consent to the use of the Meta Technologies that give rise to this suit." Def. Supp. Br at p.4 [Doc. 23]. Of course, it does not.

While Defendant's referenced privacy policies say cookies and pixels on its website "may collect certain information, such as device identifiers, your IP address, other unique identifiers, all of the areas within the Sites that you visit, and the length and time of the visit," they obviously do not disclose the specific conduct at issue in this case: that Defendant shared with Meta individually-identifiable health information collected from patients' communications on Defendant's website about their medical conditions concerns, symptoms, appointments, providers, treatments, medications, bills, and insurance. *See e.g.,* Complaint at ¶¶ 1-14, 65-83, 145-153 [Doc. 1]. Nor were Defendant's disclosures limited to generic website-use data. Plaintiff has alleged that Defendant transmitted the substance of patients' healthcare communications together with unique identifiers captured by the Meta Pixel, allowing those communications to be linked to specific individuals and rendering the disclosed information individually identifiable health information protected by HIPAA. *Id*. at ¶¶ 73-83, 111-129. Many courts addressing materially-similar pixel tracking allegations have held such disclosures can support HIPAA violations where the covered entity lacked appropriate written authorization.[2] This is exactly what Plaintiff alleges here: that Defendant's Notice of Privacy Practices did not provide the authorization required by federal and state law to disclose PHI for these purposes. *Id*. at ¶¶ 210-211; *see* 45 CFR § 164.508.

[2] *Hannant v. Culbertson Memorial Hospital Foundation*, 2026 WL 777296, *6-8 (S.D.N.Y March 19, 2026); *Pattison v. Teladoc Health, Inc*., 2025 WL 1756364, *3 (S.D.N.Y. June 25, 2025); B.*N. v. Oregon Reproductive Medicine, LLC*, 2026 WL 915343, *5 (D. Or. April 3, 2026); *Theys v. Dental Intel., Inc*., 2026 WL 636743, *12-13 (N.D. Ill. Mar. 6, 2026); *Ramirez v. LasikMD USA, Inc*., 2026 WL 194855, *3 (S.D. Cal. Jan. 26, 2026); *Hartley v. Univ. of Chicago Med. Ctr*., 2025 WL 2802317 (N.D. Ill. Oct. 1, 2025); *Mayer et al. v. Midwest Physician Adm. Serv*., LLC, 2025 WL 963779, *1-3 (N.D. Ill. Mar. 31, 2025); *Strong v. LifeStance Health Grp. Inc*., 2025 WL 317552, *4-5 (D. Ariz. Jan. 28, 2025).

Because neither of Defendant's cited policies clearly disclosed the specific actions Plaintiff challenges, it cannot claim either to have provided clear, accessible notice to Plaintiff or the Class members, or to have secured their voluntary, informed, or specific consent to use their individually identifiable health information for commercial purposes.

A decision precisely on point, *In re Meta Pixel Healthcare Lit.*, examined the same Facebook policies referenced in Defendant's arguments and squarely rejected the same argument it offers here, holding: "[Meta's] generalized notice is not sufficient to establish consent" to the disclosure of private health information. *In re Meta Pixel Healthcare Lit.*, 647 F.Supp.3d at 793. In reaching this conclusion, *In re Meta* held that Facebook's Terms of Use and Pixel data sharing policies did not provide a valid basis for consent for the obvious reason that the average person does not assume or understand that a social media company has access to their protected health information:

> I am skeptical that a reasonable user who viewed Meta's policies would have understood that Meta was collecting protected health information… *even if* a reasonable Facebook user would have understood that Meta's data collection included health information from their medical provider, that must still be squared with its representation that it 'requires' any third-party to have 'lawful rights to collect, use and share your data before providing any data to us.'

*Id.* (citations omitted). Accordingly, neither Defendant's Privacy Policies nor the Meta data sharing policy they reference and link, fairly requires a conclusion that Plaintiff or the Class members knew about, much less gave informed consent for, the interception or disclosure of their individually identifiable health information from Defendant to Meta for commercial purposes.

## III. CONCLUSION

For all the foregoing reasons, Plaintiff respectfully renews her request that the Court deny Defendant's Motion to Dismiss in all respects.

Respectfully Submitted,

Dated: June 29, 2026

/s/ *David J. Cohen*
David J. Cohen
STEPHAN ZOURAS, LLC
170 S. Independence Mall West, Suite 901
Philadelphia, PA 19106
(215) 873-4836

James B. Zouras (*pro hac vice*)
Michael Casas (*pro hac vice*)
STEPHAN ZOURAS, LLC
222 W. Adams Street, Suite 2020
Chicago, IL 60606
(312) 233-1550

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that, on this date, I caused a true and correct copy of the foregoing pleading to be served on all record counsel through the Court's ECF filing system.

Dated: June 29, 2026 /s/ *David J. Cohen*