**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **CATHRYN THORPE,**<br>**Plaintiff,**<br>**v.**<br>**THOMAS JEFFERSON UNIVERSITY HOSPITALS, INC.,**<br>**Defendant.** | **CIVIL ACTION NO. 25-7167** |

# MEMORANDUM OPINION

**Rufe, J.** **August 3, 2026**

Plaintiff Cathryn Thorpe filed the instant proposed class action against Defendant Thomas Jefferson University Hospitals, Inc. ("Jefferson Health"), asserting various claims arising out of Defendant's alleged use of Meta Platforms, Inc.'s ("Meta") advertising technology on Jefferson Health's website. Defendant has moved to dismiss these claims. For the reasons explained below, the Motion will be granted in part and denied in part.

## I. BACKGROUND

### A. Factual Background[1]

Jefferson Health is a multi-state non-profit health system based in Philadelphia, Pennsylvania.[2] Plaintiff Cathryn Thorpe has been a Jefferson Health patient since before 2018.[3] Before 2018, she created an account on Jefferson Health's web properties ("MyJeffersonHealth").[4] She also created an account on Facebook before 2018 and has

[1] The facts alleged in the Complaint are assumed true for purposes of ruling on the Motion to Dismiss.

[2] Compl. ¶ 144 [Doc. No. 1].

[3] *Id.* at ¶ 145.

[4] *Id.*

continuously maintained this account to the present.[5] At the time she used MyJeffersonHealth, Plaintiff alleges Jefferson Health utilized Meta's "tracking and collection tools, including the Meta Pixel, meta SDK, Meta Conversions API, Customer list uploads, social plug-ins, the Meta Graph API, server-to-server transmissions, and all similar collection tools (collectively "Meta Collection Tools")."[6] Meta works with healthcare providers to use these collection tools to sell targeted advertising based on patients' online behavior.[7]

Jefferson Health installed the Meta Collection Tools on its website, the MyJeffersonHealth online portal, and the MyJeffersonHealth mobile application.[8] When a patient uses MyJeffersonHealth the Meta Collection Tools transmit the content of their communications to Meta, including:

> (1) signing-up for a patient portal; (2) signing-in or -out of a patient portal; (3) taking actions inside a patient portal; (4) making, scheduling, or participating in appointments; (5) exchanging communications relating to doctors, treatments, payment information, health insurance information, prescription drugs, prescriptions, side effects, conditions, diagnoses, prognoses, or symptoms of health conditions; (6) conduct a search on Jefferson Health's web properties; and (7) other information that qualifies as "personal health information" under federal and state laws.[9]

The tools instantaneously collect and transmit information that identifies a Facebook user's status and other health information, and Jefferson Health monetizes this information for its financial gain.[10] The information transferred to Meta from the Jefferson Health web properties always includes information sufficient to identify a patient under federal law.[11] This information

---

[5] *Id.*

[6] *Id.* at ¶ 1.

[7] *Id.* at ¶ 3.

[8] *Id.* at ¶ 4.

[9] *Id.* at ¶ 5.

[10] *Id.* at ¶¶ 1, 6, 8.

[11] *Id.* at ¶ 7.

includes IP address information and device identifiers that can be associated with a patient's Meta account, including:

> a patient's demographic information, email address, phone number, computer ID address, or contact information entered as emergency contacts or for advanced care planning, along with information like appointment type and date, a selected physician, button and menu selections, the content of buttons clicked and typed into text boxes, and information about the substance, purport, and meaning of patient requests for information from Jefferson Health under federal and state health privacy laws.[12]

Meta collects the information and uses cookies to "match it to Facebook users."[13] This allows Jefferson Health and Meta to target ads both on and off Facebook to a person who has used the portal.[14] Defendant's use of Meta's collection tools on its web-properties caused the "interception and disclosure . . . of thousands of Jefferson Health patients' individually identifiable health information" ("IIHI").[15]

Plaintiff alleges that Jefferson Health's Notice of Privacy Practices states that "Jefferson Health understands that information about you and your health is very personal. Therefore, we strive to protect your privacy. We are required by law to maintain the privacy of our patients' protected health information."[16] The Notice, as referenced by the Complaint, also represents that should Jefferson Health disclose personal health information for marketing purposes or where remuneration or a sale occurs, Jefferson Health will obtain written authorization from the patient first.[17]

---

[12] *Id.*

[13] *Id.* at ¶ 9.

[14] *Id.*

[15] *Id.* at ¶ 56.

[16] *Id.* at ¶ 67.

[17] *Id.* at ¶¶ 68-69.

Plaintiff also alleges that she never provided informed consent or written permission to allow Jefferson Health to send health information to Meta or use the information for their own commercial use.[18] Meta used the intercepted content of Plaintiff's communication with Jefferson Health to repeatedly show ads targeting her status as a patient of Jefferson Health, her medications, and her symptoms routinely after using Jefferson Health's web-properties.[19] Jefferson Health does not notify users of MyJeffersonHealth that IIHI is being contemporaneously sent to Meta, nor does Jefferson Health notify patients that Meta or Jefferson Health is using this information for commercial purposes.[20]

Plaintiff brings five claims on behalf of a proposed class based on these allegations: violation of the Electronic Communications Privacy Act ("ECPA")[21] (Count I); breach of contract (Count II), Negligence (Count III), intrusion upon seclusion – invasion of privacy (Count IV), and unjust enrichment (Count V).

### B. Procedural Background

This case follows relevant procedural history from related case *Murphy v. Thomas Jefferson University Hospitals*. In that action, on November 22, 2022, plaintiffs Nancy Murphy and Robert Stewart filed a proposed class action against Defendant Jefferson Health and Meta Platforms, Inc. asserting claims arising out of Defendant's alleged use of Meta Platforms, Inc.'s. advertising on Defendant's website and portals.[22] The claims against Meta were transferred by

[18] *Id.* at ¶ 150.

[19] *Id.* at ¶ 151.

[20] *Id.* at ¶¶ 78-80.

[21] 18 U.S.C. § 2510, *et seq*.

[22] Complaint at ¶¶ 30, 40-43, *Murphy v. Thomas Jefferson Hospitals, Inc.,* No. 22-cv-4674 (E.D. Pa. Nov. 22, 2022), Doc. No. 1.

stipulation to the Northern District of California for consolidation with the *In Re Meta Pixel Healthcare Litigation*.[23]

After the *Murphy* plaintiffs amended their complaint twice, this Court denied Defendant's Motion to Dismiss the Second Amended Complaint.[24] The *Murphy* plaintiffs then moved for leave to amend the complaint to substitute a named plaintiff because their counsel determined that the originally named plaintiffs did not meet the criteria to support the claims pled during the relevant time period.[25] Defendant Jefferson Health opposed the motion and filed a Motion to Dismiss for lack of jurisdiction.[26] This Court denied the *Murphy* plaintiffs' Motion to Amend and granted the Defendant's Motion to Dismiss on December 17, 2025.[27]

The very next day, on December 18, 2025, Plaintiff Cathryn Thorpe filed the instant proposed class action.[28] Thorpe's Complaint is materially identical to the Second Amended Complaint filed in *Murphy*.[29] Defendant moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).[30] This Court thereafter ordered supplemental briefing directing the parties to address whether its rulings in *Murphy* control and resolve the

[23] Civil Action No. 22-3580 (N.D. Cal. June 17, 2022).

[24] *Murphy,* Civil Action No. 22-cv-4674, 2024 WL 4350328, at *5, *7-8 [Doc. 54] (E.D. Pa. Sept. 30, 2024).

[25] Plaintiff's Motion for Leave to File Third Amended Complaint, Substitute Named Plaintiffs, and Compel Discovery Responses at 1, *Murphy*, No. 22-cv-4674 (E.D. Pa. Apr. 9, 2025), Doc. No. 61.

[26] Defendant's Motion to Dismiss Plaintiff's Claims for Lack of Jurisdiction at 1, *Murphy*, No. 22-cv-4674 (E.D. Pa. Apr. 23, 2025), Doc. No. 62.

[27] 12/17/25 Order, *Murphy*, No. 22-cv-4674 (E.D. Pa. Dec. 17, 2025), Doc. No. 69.

[28] Compl. at ¶ 1 [Doc. No. 1].

[29] *Id.*; Second Amended Class Action Compl. at ¶ 1, *Murphy*, No. 22-cv-4674 (E.D. Pa. Oct. 27, 2023), Doc. No. 36. This case was not marked as related to *Murphy* upon filing, and it was initially assigned to the Honorable Joel H. Slomsky. Following Judge Slomsky's identification of this action's relation to Murphy, the case was transferred to this Court given its familiarity with the *Murphy* action. 3/11/26 Order [Doc. No. 16]; 5/19/26 Order [Doc. No. 21].

[30] Mem. Supp. Mot. Dismiss Compl. at 12 [Doc. No. 9-1].

issues in Defendant's Motion to Dismiss.[31] Now, the issues having been fully briefed, the Court considers the merits of the Motion to Dismiss.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.[32] The Court must accept as true all factual allegations in the Complaint and draw all reasonable inferences in favor of Plaintiffs.[33] However, plaintiffs must plead "more than labels and conclusions," and "[f]actual allegations must be enough to raise the right to relief above the speculative level."[34] Courts consider the complaint in its entirety, documents incorporated into the complaint by reference and matters of which a court may take judicial notice.[35]

## III. DISCUSSION

Defendant's Motion to Dismiss largely mirrors its Motion to Dismiss the *Murphy* Complaint, which was denied. The Court directed the parties to file supplemental briefs identifying the issues in the motion to dismiss that were not previously decided in *Murphy*. The parties identified arguments relating to whether the claims are time-barred, and whether consent bars the claims.[36] Accordingly, because the parties have not identified a reason for the Court to

---

[31] 6/1/26 Order [Doc. No. 22].

[32] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

[33] Fed. R. Civ. P. 12(b)(6); *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023).

[34] *Twombly*, 550 U.S. at 545.

[35] *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

[36] Def's. Suppl. Br. Supp. Mot. to Dismiss at 1-5 [Doc. No. 23]; Pl's. Suppl. Br. Opp. Mot. to Dismiss at 2-8 [Doc. No. 24].

diverge from its previous rulings, the Motion to Dismiss will be denied to the extent it re-raises arguments previously decided.[37]

The Court notes that it dismissed the *Murphy* action for lack of jurisdiction because the only two named plaintiffs lacked standing to bring the action.[38] Relying on Newberg and Rubenstein on Class Actions, the Court recognized that "if a class has only one class representative and that party does not have standing, then the court lacks jurisdiction over the case and it must be dismissed."[39] "If the case only had this one class representative from the outset, then there is no opportunity for a substitute class representative to take the named plaintiff's place because this means that the court never had jurisdiction over the matter."[40] Thus, the Court never had jurisdiction over the *Murphy* action because both *Murphy* plaintiffs lacked standing. However, the Court's lack of jurisdiction over that action does not preclude Plaintiff's filing of the instant action. As Newberg and Rubenstein note, "[i]n the case involving one class representative who lacks standing, where a court must dismiss for lack of jurisdiction, the dismissal may be little more than formal, for if class counsel has other available class representatives, then they can simply refile the case in those representatives' names."[41] Accordingly, Plaintiff was not barred from refiling the class action in her name based on the Court's previous dismissal. However, the instant complaint remains subject to respective statutes of limitations and other defenses.

---

[37] The Court notes that Defendant re-raises a claim for failure to sufficiently allege recoverable damages as a standing issue after raising it as a failure to state a claim issue in *Murphy*. Def's. Mem. L. Supp. Mot. to Dismiss at 6 [Doc. No. 9-1]. The Court addressed the recoverability of damages in *Murphy*, so it will not address the standing argument further. *Murphy,* Civil Action No. 22-cv-4674, 2024 WL 4350328, at *5, *7-8 [Doc. No. 54] (E.D. Pa. Sept. 30, 2024).

[38] 12/17/25 Order, *Murphy*, No. 22-cv-4674 (E.D. Pa. Dec. 17, 2025), Doc. No. 69.

[39] 1 *Newberg and Rubenstein on Class Actions* § 2:8 (6th ed. 2025).

[40] *Id*.

[41] *Id*.

**A. Statute of Limitations**

Defendant first argues that Plaintiff's claims are time-barred and thus must be dismissed.[42] Plaintiff's Complaint alleges that she created a Facebook account prior to 2018, has continuously maintained the account to the present, has been a patient of Jefferson Health since before 2018, and created an account on Jefferson Health web properties before 2018.[43] It further alleges that "[w]hen Meta Collection Tools were present, at the same time [Plaintiff] was seeking diagnosis and treatment . . . , Plaintiff used the MyJeffersonHealth website . . . and the MyChart patient portal . . . ."[44]

Defendant argues that Plaintiff's claims are barred by applicable statutes of limitations. First, ECPA (Count I) has a two-year statute of limitations that requires any ECPA action be "commenced [no] later than two years after the date upon which the claimant first has a reasonable opportunity to discover the violation."[45] A claim for negligence (Count III) under Pennsylvania law also has a two-year statute of limitations.[46] Invasion of privacy (Count IV) has a one-year statute of limitations.[47] Unjust enrichment (Count V) and breach of contract (Count II) each have a four year statute of limitations.[48]

Typically, "the statute of limitations begins to run as soon as a right to institute and maintain suit arises."[49] "However, in some circumstances, although the right to institute suit may

---

[42] Def's. Suppl. Br. Supp. Mot. to Dismiss at 1-2 [Doc. No. 23]; Def's. Mem. L. Supp. Mot. to Dismiss at 6-8 [Doc. No. 9-1].

[43] Compl. ¶¶ 145-47 [Doc. No. 1].

[44] *Id.* at ¶ 147.

[45] 18 U.S.C. § 2520(e).

[46] 42 PA. CONS. STAT. § 5524(7).

[47] *Id.* § 5523(1).

[48] *Id.* §§ 5525(a)(4), (8).

[49] *Crouse v. Cyclops Indus.*, 745 A.2d 606, 611 (Pa. 2000).

arise, a party may not, despite the exercise of diligence, reasonably discover that he has been injured."[50] In these cases, the "discovery rule" applies.[51] "The discovery rule is a judicially created device which tolls the running of the applicable statute of limitations until the point where the complaining party knows or reasonably should know that he has been injured and that his injury has been caused by another party's conduct."[52]

Plaintiff's Complaint alleges that "Plaintiff and the Class members did not discover and did not know of any facts that would have caused a reasonable person to suspect that Jefferson Health was acting unlawfully."[53] The Complaint further states that "[d]uring any applicable statute of limitations, Plaintiff and the Class members could not have discovered Jefferson Health's alleged wrongful conduct through the exercise of reasonable diligence."[54]

Generally, "a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings."[55] However, the Court may take judicial notice of adjudicative facts that are not subject to reasonable dispute because they are "generally known within the trial court's territorial jurisdiction" or because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."[56] The Court may take judicial notice of public records and court filings, but it may not take judicial notice of the truth of the contents of a filing.[57]

---

[50] *Id.*

[51] *Id.*

[52] *Id.*

[53] Compl. ¶ 162 [Doc. No. 1].

[54] *Id.*

[55] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

[56] Fed. R. Evid. 201(b)(1)-(2).

[57] *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999); *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (quoting *S. Cross Overseas Agencies, Inc.*, 181 F.3d at 426).

Accordingly, the Court takes judicial notice of the filing of the Initial Complaint in the *Murphy* action on November 22, 2022.[58] That Complaint raised claims alleging violation of ECPA, negligence, and invasion of privacy against Jefferson Health.[59] *Murphy* added claims for breach of contract and unjust enrichment on October 23, 2023, in its Second Amended Complaint.[60] As Defendant identifies, the filing of the *Murphy* class action asserting largely "the same claims against Jefferson Health negates Plaintiff's allegations that the alleged [violations were] not previously discoverable through the exercise of due diligence."[61]

The discovery rule "tolls the statute of limitations during the 'plaintiff's *complete inability*, due to facts and circumstances not within his control, to discover an injury despite the exercise of due diligence.'"[62] "The plaintiff has the burden of proving that he exercised reasonable diligence in bringing his claim."[63] "The salient point giving rise to [the discovery rule's] application is the inability of the injured, despite the exercise of reasonable diligence, to know that he is injured and by what cause."[64] While application of the discovery rule is typically a fact-intensive inquiry best left to the jury, where "reasonable minds would not differ in finding that a party knew or should have known on the exercise of reasonable diligence of [her] injury and its cause, the court determines that the discovery rule does not apply as a matter of law."[65] Pennsylvania applies the "inquiry notice" approach to the discovery rule, which the Pennsylvania

---

[58] Complaint, *Murphy*, No. 22-cv-4674 (E.D. Pa. Nov. 22, 2022), Doc. No. 1.

[59] *Id.* ¶¶ 37-81. The Initial *Murphy* Complaint did bring a breach of contract claim against Meta only. *Id.*

[60] Second Amended Compl. at ¶¶ 210-18, 249-55, *Murphy*, No. 22-cv-4674 (E.D. Pa. Oct. 27, 2023), Doc. No. 36.

[61] Def's. Mem. L. Supp. Mot. to Dismiss at 8 [Doc. No. 9-1].

[62] *Barnes v. Am. Tobacco Co*., 161 F.3d 127, 152 (3d Cir. 1998) (quoting *Kingston Coal Co. v. Felton Mining Co*., 690 A.3d 284, 288 (Pa. 1997)) (emphasis added).

[63] *Id.* at 152-53 (citing *Cochran v. GAF Corp*., 666 A.2d 245, 249-50 (Pa. 1995).

[64] *Fine v. Checcio*, 870 A.2d 850, 858 (Pa. 2005).

[65] *Id.* at 858-59.

Supreme Court has recognized is a more narrow approach than that applied in other jurisdictions, "as it places a greater burden on the plaintiffs because the commencement of the limitations period is grounded on inquiry notice that is tied to actual or constructive knowledge of at least some form of significant harm and of a factual cause linked to another's conduct, without the necessity of notice of the full extent of the injury, the fact of actual negligence, or precise cause."[66]

Based upon ECPA's statute of limitations and the Pennsylvania discovery rule, the latest possible date on which Plaintiff knew or reasonably should have known that she was injured is the date these claims were raised in the *Murphy* case. Plaintiff has not alleged facts supporting her claim that the existence of the previous lawsuit, brought by her own counsel, was not discoverable to her through the exercise of reasonable diligence prior to filing this action.[67] Accordingly, at the latest, the statute of limitations for Count I, Count III, and Count IV began to run on November 22, 2022. Counts I and III have a two-year statute of limitations, which ran out on November 22, 2024. Count IV has a one-year statute of limitations, which ran out on November 22, 2023. Thus, Counts I, III, and IV are presumptively time-barred.

At the latest, the statute of limitations for Counts II and V began to run on October 23, 2023. Thus, the statutes of limitations for Counts II and V will run until October 23, 2027, so these claims are not time-barred.[68]

[66] *In re Risperdal Litig.*, 223 A.3d 633, 662 (Pa. 2019) (internal citations and quotation marks omitted).

[67] *See, e.g., Isaak v. Trumbull Sav. & Loan Co.*, 169 F.3d 390, 399-401 (6th Cir. 1999) (determining that plaintiffs "reasonably should have discovered" injury following a criminal indictment of the defendant for the relevant actions); *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1325-26 (3d Cir. 2002) (discussing and applying inquiry notice standard).

[68] Even if the Court were to determine that Plaintiff reasonably could have determined her injuries prior to filing the Second Amended Complaint and could have made the determination following the Initial Murphy Complaint, the statutes of limitations would run until November 22, 2026, and her claims for unjust enrichment and breach of contract would remain timely.

Plaintiff argues that the filing of *Murphy* tolled the statute of limitations for her ECPA claim.[69] Indeed, *American Pipe & Construction Co. v. Utah* held that "the timely filing of a class action tolls the applicable statute of limitations for all persons encompassed by the class complaint."[70] However, this tolling applies only to claims brought on behalf of former individual class members.[71] "*American Pipe* tolls the statute of limitations during the pendency of a putative class action, allowing unnamed class members to join the action individually or file individual claims if the class fails. But *American Pipe* does not permit the maintenance of a follow-on class action past expiration of the statute of limitations."[72]

Because Plaintiff seeks to bring a class action ECPA complaint, the *Murphy* case did not toll the statute of limitations from the date it was filed. An individual ECPA claim on Plaintiff's behalf would have tolled during the pendency of the *Murphy* lawsuit, but the instant Complaint does not bring such a claim. Accordingly, Plaintiff's class action ECPA claim is time-barred, and the statute of limitations did not toll during the *Murphy* action.

Thus, Plaintiff's class action ECPA claim (Count I), negligence claim (Count III), and invasion of privacy claim (Count VI) are time-barred and will be dismissed. Plaintiff's class action unjust enrichment (Count II) and breach of contract (Count V) claims are not time-barred.

**B. Consent**

Defendant's Motion to Dismiss also argues that Plaintiff failed to state a claim for invasion of privacy (Count IV) because she consented to the use of Meta Technologies.[73] In its

---

[69] Pl's. Resp. Opp. Mot. to Dismiss at 4-5 [Doc. No. 15].

[70] *China Agritech v. Michael H. Resh*, 584 U.S. 732, 735 (2018) (citing *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 544, 552-53 (1974)).

[71] *Id.* at 735-36.

[72] *Id.* at 736.

[73] Def's. Mem. L. Supp. Mot. to Dismiss at 26-27 [Doc. No. 9-1].

supplemental brief requested by this Court, Defendant extends this argument to each of Plaintiff's claims, including her remaining breach of contract and unjust enrichment claims.[74] Because Count IV cannot proceed, the Court will evaluate Defendant's argument as to breach of contract and unjust enrichment.

Defendant argues that Plaintiff consented to the share and use of personal information, including sharing to Facebook, because Jefferson Health's website now provides a disclaimer that has been included in its Privacy Policy since May 14, 2024.[75] The disclaimer states:

> We or our vendors may use cookies, web beacons, pixels, and other similar technologies on certain webpages or locations of the Sites for various purposes, including to provide functionality of the Sites, to improve performance of the Sites, to analyze and better understand how the Sites are being used, and for marketing purposes. These technologies may collect certain information, such as device identifiers, your IP address, other unique identifiers, all of the areas within the Sites that you visit, and the length and time of the visit.
>
> Our vendors may include, but are not limited to:
>
> ***
>
> > 2. **Facebook**. To change your privacy and advertising settings with Facebook, login to your Facebook account and navigate to the Privacy Center at facebook.com/privacy/center or review your Ad Preferences at facebook.com/adpreferences.
>
> ***
>
> Please note that we or other parties may collect personal information about your online activities over time and across different devices and online properties when you use the Sites.[76]

Plaintiff and Defendant agree the disclaimer is binding and effective.[77] Plaintiff claims the disclaimer does not apply to consent to Defendant's actions because the "Privacy Policy did

---

[74] Def's. Suppl. Br. Supp. Mot. to Dismiss at 4-5 [Doc. No. 23].

[75] Def's. Suppl. Br. Supp. Mot. to Dismiss at 2-3 [Doc. No. 23]; Def's. Mot. to Dismiss, Small Dec., Ex. 1, 2 [Doc. No. 9-2]. The Court may look to the updated Privacy Policy because the Privacy Policy was incorporated into the Complaint by reference. *Tellabs, Inc.*, 551 U.S. at 322.

[76] Def's. Mot. to Dismiss, Small Dec., Ex. 1, 2 [Doc. No. 9-2].

[77] Pl's. Resp. Opp'n Mot. to Dismiss at 28-30 [Doc. No. 15].

not disclose [the] specific actions Plaintiff challenges . . . ."[78] However, the Court need not parse how expansively the new Privacy Policy's consent term applies. The updated term was not in place until July 14, 2024, and as discussed, Plaintiff was on inquiry notice of the harm to her by October of 2023. Plaintiff's cause of action for her breach of contract and unjust enrichment claims accrued before the new Privacy Policy was implemented. Accordingly, she plausibly states a claim of breach of contract and unjust enrichment, at a minimum, for those harms that occurred before July 14, 2024.

The Motion to Dismiss the breach of contract (Count II) and unjust enrichment (Count V) will be denied.

## IV. CONCLUSION

For the reasons stated herein, the Motion to Dismiss will be granted in part and denied in part. An order will be entered.

[78] *Id.* at 30.